# IN THE COURT OF APPEALS OF IOWA

No. 19-1459
Filed January 9, 2020

**IN THE INTEREST OF A.D. and B.W.,**
**Minor Children,**

**E.D., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother appeals from the termination of her parental rights as to two children. **AFFIRMED.**

Edward Fishman of Hopkins & Huebner, P.C., Adel, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Lynn Vogan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

After two years of reunification efforts by the Iowa Department of Human Services (Department), the district court terminated the mother's parental rights concerning her young daughters, B.W., born in 2015, and A.D., born in 2017.[1] The mother appeals, arguing (1) the mother's due process rights under article I, section 9 of the Iowa Constitution and the Fifth and Fourteenth amendments to the United States Constitution were violated when the court permitted amendment of the termination petition at the termination hearing, (2) there was not clear and convincing evidence that the children could not be returned to the mother's custody at the time of the termination hearing, (3) the court erred in not applying an exception to termination under Iowa Code section 232.116(3) (2018),[2] (4) the mother should have been granted an additional six months to work on reunification efforts, and (5) termination is not in the children's best interests.

---

[1] The parental rights of B.W.'s father and the parental rights of A.W's father were also terminated. Neither father appeals.

[2] Under Iowa Code section 232.116(3), the court need not terminate the relationship between the parent and child if the court finds any of the following:

> *a.* A relative has legal custody of the child.
> *b.* The child is over ten years of age and objects to the termination.
> *c.* There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
> *d.* It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
> *e.* The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

On review of the record, we affirm the termination of the mother's parental rights.[3]  We find no violation of the mother's due process rights based on the amendment of the termination petition.  Like the district court, we find clear and convincing evidence in the record to support termination of the mother's parental rights under Iowa code section 232.116(1)(f)[4] and (h).[5]  Lastly, we find that termination serves the children's best interests, a six-month extension was not warranted, and there was no error by the trial court in not applying a permissive exception to termination.

---

[3] We review termination-of-parental-rights cases de novo.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  While not bound by the juvenile court's fact-findings, we give them weight, particularly on credibility issues.  *Id.*

[4] Under paragraph (f), the court can terminate when it finds all of the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[5] Under paragraph (h), the court can terminate when it finds that all of the following have occurred:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

## I. Facts and Prior Proceedings

Formal court intervention began in early September 2017, when the State filed a child-in-need-of-assistance petition regarding B.W. and A.D. However, this family had the attention of the Department prior to formal court intervention. The mother had a founded child abuse report for providing marijuana to her minor sister in 2014. After B.W.'s birth in 2015, the Department founded a report of child abuse against B.W.'s father. In March 2017, the mother's probation for burglary and unauthorized use of a credit card was revoked, resulting in a jail sentence while she was pregnant. She remained in custody until shortly before A.D.'s birth. A.D. tested positive for marijuana at birth, which resulted in a founded child abuse report against the mother. Despite this positive drug test for newborn A.D., the Department completed a safety plan, which allowed the children to remain in the mother's custody. In May 2017, the mother began receiving voluntary services.

However, the mother continued to struggle with criminal matters, substance abuse, and mental-health issues. In August 2017, the mother was involved in a physical struggle with the paternal grandmother, with the mother admitting that B.W. was in the middle of this fight. Shortly after that altercation, the mother also admitted to the Department that she would test positive for marijuana.

Approximately one month later, the mother and B.W.'s father were stopped by law enforcement in a stolen vehicle, with both children in tow. A search of the vehicle resulted in the location of marijuana and marijuana pipes. Both parents admitted to using marijuana and were taken into custody. The children were placed with a relative. On September 5, 2017, the Department determined that the mother had committed child abuse by smoking marijuana daily while caring for

both children and being involved in a physical altercation with the paternal grandmother and B.W.'s father while holding B.W. Due to violations of the previously agreed to safety plan, on October 7, 2017 the children were removed from parental custody and placed in relative care. They have remained out of parental custody since that time. There has not been a trial home placement.

The children were adjudicated to be children in need of assistance in October 2017. While the mother began substance-abuse treatment, she was later convicted of possession of drug paraphernalia. Five months after the adjudication, the mother obtained a psychiatric evaluation where she was diagnosed with bipolar 1 disorder, borderline personality disorder, and major depressive disorder. That psychiatric evaluation referenced the mother's long history of mental-health problems, including being placed outside of her own home when she was fourteen years old, a history of self-harm by cutting, six separate mental-health hospitalizations, and two previous suicide attempts.

After the arrest of B.W.'s father, the mother reported she ended her relationship with him. She immediately started a new relationship and quickly introduced this individual to her daughters. She lied to the Department about his name to conceal his criminal history. The mother struggled to accept parenting instruction and was combative with family safety, risk, and permanency (FSRP) service providers. Two months later, the mother notified the Department that she was pregnant.

That same month, May 2018, the mother tested positive for alcohol, which the mother attributed to use of cold medicine. Problems quickly arose in her new relationship, with the mother informing the Department that her new boyfriend,

Travis, was controlling and would not let her leave the home. She further disclosed that Travis was physically violent to her and stole a large sum of money from her, causing her utilities to be disconnected. She expressed intent to reunify with B.W.'s father. Less than one month later, the mother was back in a relationship with Travis. Coinciding with this reunification, the Department reported the mother had become increasingly aggressive and hostile with others, making threats to kill relatives or have someone else kill them. She punched Travis in the face. She told the Department she was looking to reengage in a relationship with B.W.'s father. However, by June 2018, she was again in a relationship with Travis.

While the mother successfully discharged from substance-abuse treatment in July 2018, five days after that discharge, the FSRP worker reported the mother became very escalated and refused to answer questions during a visit with her daughters. She was screaming, crying, and stomping throughout the home, resulting in her knocking over B.W., and bumping A.W.'s head on the cupboard. The Department reported during this visit that the mother was "so upset she was not aware of her surroundings."

Chaos continued with the mother. In August 2018, she was evicted from her home. She refused to comply with a drug screen and pled guilty to assault in September 2018. Shortly thereafter, the district court entered a permanency order directing the State to file a termination-of-parental-rights petition, noting the mother's unresolved substance-abuse and mental-health issues, lack of insight into protective concerns for her children, and lack of stable housing.

The children were removed from relative care in September 2018, due to the placement's lack of protective capabilities. They were initially placed in shelter

care and then moved to foster care, where they have remained. The mother continued her relationship with Travis. In October 2018, the State filed a termination petition, which was originally scheduled for hearing in December 2018. Subsequent to the filing of petition, the mother completed a domestic-violence-awareness class but then emailed the foster mother that Travis "gets to come back" into the children's lives when the case closed.

The mother gave birth to M.D. in December 2018.[6] Due to the birth of the baby, the termination hearing as to B.W. and A.W. was continued. The State filed a child-in-need-of-assistance petition for the new baby but developed a safety plan to allow the newborn to remain in the mother's custody, which included keeping Travis away from the new baby and the mother having no contact with Travis. M.D. was removed from her mother's custody on January 10, 2019, due to repeated violations of the safety plan by the mother. The mother admitted to relapsing on marijuana the next day.

The termination hearing was held over a period of 4 days: March 8, March 20, April 9, and April 17, 2019. In the midst of the termination proceedings, the volatile relationship between the mother and Travis continued. On April 6, 2019, an argument ensued between the two, resulting in law-enforcement intervention. The mother had to be repeatedly pulled off Travis and, at one point, she attempted to crawl under his vehicle to keep him from leaving. At the termination hearing, she maintained her relationship with Travis and referred to him as her spouse.

---

[6] M.D. is not subject to these termination proceedings.

## II. Analysis

We first address the issue concerning the amendment of the termination petition. On the second day of the termination hearing, the State moved to amend its petition to conform to the current ages of the children given the continuance of the termination proceedings. The district court granted the State's motion to amend. The mother argues she was denied the opportunity to strategize for the termination hearing based on the amendment. We reject this argument.

The amendment at issue had only to do with the ages of the children at the time of the termination hearing. At the time the petition was filed, the grounds were correct. Because of the mother's request for a continuance, the children's ages changed by the time the termination hearing was concluded, as both girls experienced another birthday out of parental custody. Specifically, the fact that B.W. turned four years old after the filing of the termination petition altered the applicable code section. The ages of the children would not have been a surprise to the mother. Given the length of the proceedings, the mother had an additional two days of court after the amendment was approved if presentation of additional evidence by the mother was necessary. We find that the amendment of the petition did not violate the mother's due process rights.

We next turn to the statutory grounds relied upon by the district court for termination of the mother's parental rights. The district court found that the State had proved the grounds for termination under Iowa Code section 232.116(1)(f) as to B.W. and Iowa Code section 232.116(1)(h) as to A.D.

The mother does not dispute the first three elements of either statutory ground, but rather, focuses on the fourth prong of each code section—that the

children could not be returned to the custody of the mother at the present time. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (interpreting the statutory language "at the present time" as the time of the termination hearing).

Based on our independent review of the record[7] we agree with the trial court, which found that, "Despite two years of services, the mother continued to struggle with domestic violence, mental health, substance abuse, and instability. Instead of meaningfully addressing these issues, she continues to use violence and dishonesty and is unable to parent . . . ." We further find it telling that during the underlying child-in-need-of-assistance proceedings concerning B.W. and A.D., the mother gave birth to a third child who was removed from her custody after violations of a safety plan.

Additionally, during the termination proceedings, the mother was involved in yet another domestic-abuse situation and continued to maintain a relationship with that individual. She has unaddressed mental-health and substance-abuse issues which resulted in her new baby being removed from her custody shortly before the instant termination proceedings were heard. B.W. and A.D. could not safely return to her custody at the time of the termination hearing. We find the district court properly found the grounds were met for termination as to the mother's parental rights under Iowa Code section 232.116(1)(f) and (h).

The mother further argues she should have been granted an additional six months for reunification efforts. We also reject this argument. The mother in this

---

[7] Our independent review of the record is decidedly more difficult due to the absence of exhibit stickers or other identifying markers on the bulk of the exhibits. It is critical for review of the trial court record that the exhibits contain an identifier on the exhibit.

case had been receiving reunification services for two years. She has been named as the perpetrator on four separate child abuse reports since 2014, with one or more of her children listed as the victims on three of the reports. At the conclusion of this two-year period, the mother is not in a position to have the children safely returned to her custody. The law requires a "full measure of patience with troubled parents who attempt to remedy" their issues. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). However, this patience "must be reasonably limited because patience on behalf of the parents can quickly translate into intolerable hardship for the children." *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989). At some point, the rights and needs of the child rise above the rights and needs of the parents. Like the trial court, we find no evidence that granting an additional six-month extension would result in the need for removal no longer being necessary, given the lack of progress on behalf of the mother. *See* Iowa Code § 232.104(2)(b).

Additionally, the mother asserts that termination is not in the children's best interests and the court should have applied a permissive exception to prevent termination, specifically due to the closeness of the parent-child relationship.

When determining if termination of parental rights is in the best interest of the child, the court is to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). B.W., age four at the time of the termination, has been out of her mother's custody since she was two years old. She suffers from PTSD as a result of witnessing domestic violence and from the trauma of her removal. Her therapist urged permanency to increase her ability to thrive. A.D. has been out of her

mother's custody since birth. The girls are placed together in a pre-adoptive home and are strongly bonded to this placement. *See id.* § 232.116(2)(b). We agree with the trial court that termination is in the children's best interests.

The trial court also declined to apply a permissive exception to termination due to the parent-child relationship, given the length of time services had been provided to the mother without success. The trial court specifically noted that the court could not find termination would be detrimental to either child due to the closeness of the parent-child relationship, noting the continued violence in the mother's relationships and continued use of a controlled substance by the mother. The mother's attitude and demeanor during the termination hearing were described by the trial court as "shocking." We further note that the mother attributed the bond between herself and B.W. was due to going through similar trauma. We find no error by the trial court in not applying this permissive exception.

**AFFIRMED.**